## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on November 3, 2016**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal No. 18-** |
| | ) | |
| | ) | **Grand Jury Original** |
| **v.** | ) | |
| | ) | **VIOLATIONS:** |
| | ) | |
| **TAREK ABOU-KHATWA** | ) | **18 U.S.C. § 1347 (Health Care Fraud);** |
| | ) | **18 U.S.C. § 1035(a)(2) (False Statements** |
| **a/k/a** | ) | **Relating to Health Care Matters);** |
| | ) | **18 U.S.C § 1341 (Mail Fraud);** |
| **DEAN ADDEM,** | ) | **18 U.S.C. § 1343 (Wire Fraud);** |
| | ) | **22 D.C. Code §§ 3227.02(1) and 3227.03(a)** |
| **Defendant.** | ) | **(First Degree Identity Theft).** |
| | ) | |
| | ) | **FORFEITURE ALLEGATION:** |
| | ) | |
| | ) | **18 U.S.C. § 982(a)(7), 21 U.S.C. § 853(p),** |
| | ) | **18 U.S.C. § 981(a)(1)(C), 28 U.S.C.** |
| | ) | **§ 2461(c) (Criminal Forfeiture).** |

### I N D I C T M E N T

The Grand Jury charges that:

### COUNT ONE
### (Health Care Fraud)

At all times material to this Indictment:

### Introduction

1. The defendant, TAREK ABOU-KHATWA, later known as DEAN ADDEM ("TAREK

ABOU-KHATWA" or "ABOU-KHATWA"), was a resident of the District of Columbia, and an

insurance broker licensed with the District of Columbia's Department of Insurance, Securities and

Banking.

1

2. As a licensed insurance broker, ABOU-KHATWA could assist small employers find group health insurance coverage for their employees. For these efforts, ABOU-KHATWA would be paid a commission from the insurance company, rather than a fee from the employers.

3. Group health insurance coverage was a policy purchased by an employer and offered to eligible employees (and often to the employees' family members) as a benefit of working for that employer. A group health insurance plan, or "group contract," was often a key component of many employee benefits packages provided to employees, and many employers offered such group health insurance coverage.

4. ABOU-KHATWA was the officer and director of Benefits Consulting Associates, LLC, ("BCA") and held the signatory authority over BCA bank accounts. BCA operated out of an office at 1025 Connecticut Avenue, NW, Suite 611, Washington, D.C. and later from 1850 M Street, NW, Washington, D.C.

5. ABOU-KHATWA also controlled and managed other entities, including YOLTN LLC, MEBT LLC, TA&A (a/k/a/ Tarek Abou-Khatwa & Associates), IGIA, and The IGIA Group, LLC, and held the signatory authority over their bank accounts. These entities operated from either the BCA business address or ABOU-KHATWA's personal residence, a single family home in Northwest, Washington, D.C.

6. CareFirst BlueCross BlueShield (hereinafter "CareFirst") was a not-for-profit, private "health care benefit program" as defined in 18 U.S.C. § 24(b), in that it provided health insurance and managed care services throughout Maryland, the District of Columbia, and Northern Virginia. It offered health insurance plans for individuals and groups, as well as dental and vision insurance,

2

and other products. CareFirst was one of the largest health care insurers in the Mid-Atlantic region, serving 3.4 million members.

7. CareFirst contracted with brokers authorizing them to solicit applications for group health insurance contracts for CareFirst's determination of acceptance or rejection.  ABOU-KHATWA, through his company BCA, was a broker for CareFirst until May 2011, and received commissions from CareFirst as his compensation as a broker.

8. In order for an employer to offer its employees CareFirst coverage, the employer would contact a CareFirst broker and fill out a list of the employees who wished to obtain CareFirst coverage (such a list was called a "census report").  Because CareFirst required a company to have 75% of its employees enrolled to qualify for health care coverage, a company at times must also submit to CareFirst a copy of a wage and tax form to verify the 75% enrollment.  In the District of Columbia, such wage and tax forms were to be filed with the Department of Employment Services and identified as UC-30 forms ("wage/tax forms").

9. The insurance premium rates ("premiums") for group contracts were based on multiple factors, the most significant one being the average age of the covered employees listed on the census and wage/tax forms.

10. Once the employer agreed to the terms and the premiums were set, then the group contract was established and the individual employees could begin to complete applications for coverage, listing family members who would be covered, past medical history, and other personal health information.

11. CareFirst allowed changes to be made to the insurance coverage through a computer system called "CareFirst Connect."  Enrollment changes, such as adding or deleting employees or

their dependents, or changing an employee's biographical information, could be handled by the employer's group contract administrator ("employer group administrator") through CareFirst Connect.

## The Scheme to Defraud

12. Beginning in or about 2010, and continuing to in or about 2013, in the District of Columbia and elsewhere, the defendant TAREK ABOU-KHATWA, knowingly, willfully, and with intent to defraud, executed a scheme and artifice: (a) to defraud a health care benefit program, as defined in Title 18, United States Code, Section 24(b), namely CareFirst, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from CareFirst by means of materially false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Scheme

13. It was a purpose of the scheme for ABOU-KHATWA to unlawfully enrich himself by creating fake groups of insured individuals, which included both fictitious names and real people with altered years of birth, to fraudulently obtain lower insurance premium quotes from CareFirst; once the premium rates were set, ABOU-KHATWA had the CareFirst invoices sent directly to him instead of his clients, marked up the insurance premiums charged by CareFirst, and pocketed the difference between the two. Through this scheme, ABOU-KHATWA fraudulently siphoned off in excess of $2 million in illegal proceeds, and diverted the proceeds of the fraud for his personal use and benefit.

4

**Manner and Means**

14.  ABOU-KHATWA accomplished the purpose of the fraud scheme by using the following manner and means, among others:

a.  ABOU-KHATWA submitted fraudulent employer group contract applications to CareFirst containing material misrepresentations including the number, identity, and ages of employees who sought coverage under the group contracts, and using either his own or other companies' names, with or without permission. ABOU-KHATWA controlled the group administrators' duties enabling him to alter employee information, such as dates of birth and enrollment.  CareFirst approved these applications, being unaware of the fraudulent nature of the information, resulting in numerous employer group contracts ("Shell Contracts");

b.  While he held a broker agreement with CareFirst, ABOU-KHATWA submitted these employer group applications using his own name as a broker; after he was terminated as a CareFirst broker, ABOU-KHATWA continued his scheme under the names of other brokers, set up another company for his dealings with his clients, and changed his name;

c.  ABOU-KHATWA solicited, and employed others to solicit, small organizations primarily in the District of Columbia claiming that he could obtain advantageous CareFirst health insurance coverage at competitive premiums.  He targeted small non-profit organizations, with a small number of employees and limited capacity for administrative responsibilities.  During the course of the scheme, various small organizations agreed to become clients for purposes of obtaining CareFirst health coverage ("Clients");

d.  Because the premiums were based primarily on the average age of the employees, ABOU-KHATWA did the following, among other things, during the premium assessment periods:

5

distributed the clients' employees among the Shell Contracts, without regard to the actual employer; falsified the years of birth to lower the ages of current or former employees; used actual individuals with phony dates of birth and fictitious names and dates of birth. Through this method, ABOU-KHATWA fraudulently lowered the average age of employees within each Shell Contract and thereby obtained a lower premium from CareFirst than would have been obtained using accurate information;

e. When CareFirst undertook audits of the employer groups, ABOU-KHATWA submitted false employee census reports, wage/tax forms, and paystubs, among other false documents, to CareFirst to justify the listings of employees in the Shell Contracts;

f. ABOU-KHATWA added himself as the point of contact and instructed his Clients to refrain from contacting CareFirst but instead to refer any questions or correspondence with CareFirst to him;

g. ABOU-KHATWA arranged for his company to send invoices with marked-up premiums to his Clients with the instructions that they return checks to him for their health insurance premiums, which were higher than the premiums fraudulently obtained from CareFirst; and

h. ABOU-KHATWA instructed his employees to deposit the Clients' premium checks into his company's bank accounts and then would pay the lower CareFirst premiums, keeping the difference for himself.

### Execution of the Scheme

15.  In execution of his scheme to defraud CareFirst, the defendant TAREK ABOU-KHATWA caused CareFirst to insure employees of his Clients for fraudulently obtained premium rates; siphoned off the difference from the insurance premiums paid by his Clients and those due

to CareFirst; submitted false information during CareFirst audits; and, at times, caused the Clients'

employees to be denied coverage for medical care due to discrepancies in their CareFirst listed age

and their true dates of birth.

16.   As a result of the scheme to defraud, the defendant TAREK ABOU-KHATWA

received in excess of $2 million, which he was not entitled to receive.

**(Health Care Fraud, in violation of Title 18, United States Code, Section 1347).**

### COUNTS TWO THROUGH FOUR
### (FALSE STATEMENTS RELATING TO HEALTH CARE MATTERS)

17.   The Grand Jury re-alleges and incorporates by reference the allegations of paragraphs 1

through 11, and 13, 14, and 16 of this Indictment as if fully set forth herein.

18.   On or about the dates specified below, in the District of Columbia and elsewhere, the

defendant TAREK ABOU-KHATWA, in a matter involving a health care benefit program,

specifically, CareFirst, knowingly and willfully falsified, concealed, and covered up by trick, scheme,

and device material facts, and made and caused to be made materially false, fictitious, and fraudulent

statements and representations, and made, used, and caused to be made and used materially false

writings and documents knowing the same to contain materially false, fictitious, and fraudulent

statements and entries, in connection with the delivery of and payment for health care benefits, items,

and services, and submitted and caused to be submitted the statement described below (each statement

constituting a separate count of this Indictment), in that the statements were false for the reasons

described below:

| Count | On or About Date Submitted | False Statement |
|-------|----------------------------|-----------------|
| TWO | 6/10/2013 | Group census report falsely listing employees for Shell Company identified in these proceedings as "Shell Company N" |

| THREE | 8/7/2013 | Listed client's former employee KS with false date of birth for Shell Company N during premium assessment period |
| FOUR | 8/18/2013 | Listed client's former employee RS with false date of birth into Shell Company N during premium assessment period |

**(False Statements Relating to Health Care Matters,
in violation of Title 18, United States Code, Section 1035(a)(2)).**

## COUNTS FIVE THROUGH TWELVE
### (MAIL FRAUD)

19. From in or about 2010 until in or about 2013, within the District of Columbia and elsewhere, the defendant TAREK ABOU-KHATWA, devised and intended to devise a scheme to defraud CareFirst, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, from CareFirst, by fraudulently obtaining health insurance premiums from CareFirst and then charging his clients a higher price, as more fully described below.

20. Paragraphs 1 through 11, and 13, 14, and 16 of Count One of this Indictment are hereby realleged, and contain the description of the above-mentioned scheme.

21. On or about the dates listed below, in the District of Columbia and elsewhere, the defendant TAREK ABOU-KHATWA, for the purpose of executing and attempting to execute the above-described scheme to defraud and obtaining money and property by materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by the United States Postal Service to the District of Columbia as more fully described below:

| Count | On or About Date | Description |
|---|---|---|
| FIVE | 5/9/2013 | Client identified in these proceedings as A mailing check to defendant for insurance premiums |
| SIX | 5/28/2013 | Client identified in these proceedings as ISEA mailing check to defendant for insurance premiums |
| SEVEN | 6/6/2013 | Client identified in these proceedings as NASDDDS mailing check to defendant for insurance premiums |

8

| EIGHT | 6/10/2013 | Group census report for Shell Company N mailed to CareFirst |
| NINE | 6/11/2013 | Client identified in these proceedings as AME-S mailing check to defendant for insurance premiums |
| TEN | 7/19/2013 | Client identified in these proceedings as ACA mailing check to defendant for insurance premiums |
| ELEVEN | 8/5/2013 | Client identified in these proceedings as NOVA mailing check to defendant for insurance premiums |
| TWELVE | 8/8/2013 | Client identified in these proceedings as T mailing check to defendant for insurance premiums |

**(Mail Fraud, in violation of Title 18, United States Code, Section 1341).**

## COUNTS THIRTEEN THROUGH EIGHTEEN
### (WIRE FRAUD)

22. From in or about 2010 until in or about 2013, within the District of Columbia and elsewhere, the defendant TAREK ABOU-KHATWA devised and intended to devise a scheme to defraud CareFirst, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, from CareFirst, by fraudulently obtaining health insurance premiums from CareFirst and then charging his clients a higher price, as more fully described below.

23. Paragraphs 1 through 11, and 13, 14, and 16 of Count One of this Indictment are hereby realleged, and contain the description of the above-mentioned scheme.

24. On or about the dates listed below, in the District of Columbia and elsewhere, the defendant TAREK ABOU-KHATWA, for the purpose of executing and attempting to execute the above-described scheme to defraud, did willfully cause to be transmitted by means of wire communication in interstate commerce from the District of Columbia certain writings, signals, and sounds, that is, the items listed below:

9

| Count | On or About Date | Description |
|-------|------------------|-------------|
| THIRTEEN | 6/6/2013 | Email from BCA to Client identified in these proceedings as BLS attaching invoice for insurance premiums |
| FOURTEEN | 6/6/2013 | Email from BCA to Client identified in these proceedings as AC attaching invoice for insurance premiums |
| FIFTEEN | 6/6/2013 | Email from BCA to Client identified in these proceedings as E attaching invoice for insurance premiums |
| SIXTEEN | 7/2/2013 | Email from BCA to Client identified in these proceedings as NHCOA attaching invoice for insurance premiums |
| SEVENTEEN | 7/2/2013 | Email from BCA to Client identified in these proceedings as GL attaching invoice for insurance premiums |
| EIGHTEEN | 7/2/2013 | Email from BCA to Client identified in these proceedings as MH attaching invoice for insurance premiums |

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343).**

## COUNTS NINETEEN THROUGH TWENTY-FOUR
## (IDENTITY THEFT IN THE FIRST DEGREE)

25. The Grand Jury re-alleges and incorporates by reference the allegations of paragraphs 1 through 11, and 13, 14 and 16 of this Indictment as if fully set forth herein.

26. On or about the dates listed below, in the District of Columbia, the defendant TAREK ABOU-KHATWA knowingly used the personal identifying information belonging to another person, that is the names of those listed below to obtain and attempt to obtain property fraudulently and without those persons' consent, and thereby obtained such property, the value of such property being in excess of $1,000:

| Count | On or About Date | Description |
|-------|------------------|-------------|
| NINETEEN | 9/11/2012 | Use of name of AI, which was located in the District of Columbia |
| TWENTY | 9/11/2012 | Use of name of CP, who resided in the District of Columbia |
| TWENTY-ONE | 10/10/2012 | Use of name and Social Security Number of PC, who resided in the District of Columbia |
| TWENTY-TWO | 10/10/2012 | Use of name and Social Security Number of AP |

| TWENTY-THREE | 8/18/2013 | Use of name and Social Security Number of RS |
| TWENTY-FOUR | 8/7/2013 | Use of name and Social Security Number of KS |

**(Identity Theft in the First Degree, in violation of Title 22, District of
Columbia Code, Sections 3227.02(1) and 3227.03(a)).**

## FORFEITURE ALLEGATION

1.  Upon conviction of any of the offenses alleged in Count One through Count Four, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of these offenses, pursuant to 18 U.S.C. § 982(a)(7).  The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of these offenses

2.  Upon conviction of any of the offenses alleged in Count Five through Count Eighteen, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

3.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the Court;

    d.      has been substantially diminished in value; or

e.      has been commingled with other property that cannot be divided without

difficulty

the defendant shall forfeit to the United States any other property of the defendant, up to the value of

the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 982(a)(7),**
**Title 18, United States Code, Section 981(a)(1)(C), Title 28, United Sates Code, Section 2461(c),**
**and Title 21, United States Code, Section 853(p)).**

A TRUE BILL

FOREPERSON

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA