UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| TAREK ABOU-KHATWA ) | Case No. 18-cr-00067 (TSC) |
| ) | |
| a/k/a ) | |
| ) | |
| DEAN ADDEM, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Defendant Tarek Abou-Khatwa was convicted of using his position as an insurance broker for Benefits Consulting Associates, LLC (BCA) to defraud CareFirst BlueCross BlueShield (CareFirst).  (ECF No. 1, Indictment ¶¶ 2, 4, 6, 12.)  As part of this scheme, Abou-Khatwa provided CareFirst with fraudulent information to obtain low insurance premiums, and then marked up the premiums he charged his clients, pocketing the difference.  (*Id.* ¶ 13.)  Abou-Khatwa was indicted on one count of devising a scheme to defraud a health care program (18 U.S.C. § 1347), three counts of false statements related to health care matters (18 U.S.C. § 1035(a)(2)), eight counts of mail fraud (18 U.S.C. § 1341), six counts of wire fraud (18 U.S.C. § 1343), and six counts of identity theft (22 D.C. Code §§ 3221(a) and 3222(a)(1)).  (Indictment).  After a ten-day trial, a jury found Abou-Khatwa guilty on twenty-two counts.[1]  (ECF No. 139, Trial Tr. at 1722:2–1725:25.)  Abou-Khatwa has moved for a new trial.  (ECF No. 145).  For the reasons set forth below, the motion will be DENIED.

---

[1] After both sides rested, the court granted Abou-Khatwa's unopposed motion for a judgment of acquittal on one count of mail fraud and one count of identity theft in the first degree, counts 12 and 21 of the indictment, respectively.  (ECF No. 138, Trial Tr. at 1626:23–1627:24.)

1

## I.   LEGAL STANDARD

Whether to grant a motion for a new trial is "a decision committed to the Court's sound discretion."  *United States v. Williams*, 825 F. Supp. 2d 128, 132 (D.D.C. 2011) (quoting *United States v. Neill*, 964 F. Supp. 438, 441 (D.D.C. 1997)).  Federal Rule of Criminal Procedure 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  "[C]ourts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial."  *United States v. Cabrera*, 734 F. Supp. 2d 66, 87–88 (D.D.C. 2010) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)), *aff'd sub nom. United States v. Vega*, 826 F.3d 514 (D.C. Cir. 2016).  Where a defendant alleges that evidence was wrongly admitted, "the test is 'not whether evidence was sufficient to convict notwithstanding the error, but whether the court can say that the error did not affect the jury's verdict.'"  *United States v. McGill*, 815 F.3d 846, 886 (D.C. Cir. 2016) (quoting *United States v. Watson*, 171 F.3d 695, 700 (D.C. Cir. 1999)).  Still, a new trial "should be granted only if the defendant has shown that the error was substantial, not harmless, and that the error affected the defendant's substantial rights."  *Williams*, 825 F. Supp. 2d at 132 (D.D.C. 2011) (internal quotation marks omitted).

## II.   ANALYSIS

**A.   <u>Admission of Evidence under Fed. R. Evid. 404(b)</u>**

Abou-Khatwa argues that the court improperly admitted two types of evidence at trial: (1) evidence suggesting that he defrauded his clients, and (2) evidence regarding events that occurred before the statute of limitations.  (ECF No. 155, Def. Reply at 2.)

Fed. R. Evid. 404(b) prohibits the admission of evidence "if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660–61 (D.C. Cir. 2003) (citing *United States v. Bowie*, 232 F.3d 923, 929–30 (D.C. Cir. 2000). The rule exempts evidence introduced for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). This list is "not 'exhaustive, but merely illustrative.'" *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990) (quoting *United States v. Moore*, 732 F.2d 983, 987 n.31 (D.C. Cir. 1984)). The government has the burden of showing that Rule 404(b) "evidence is relevant to one or more issues in the case." *United States v. Biswell*, 700 F.2d 1310, 1317 (10th Cir. 1983). "[E]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

To prove healthcare fraud under 18 U.S.C. § 1347, the government must establish that the defendant "knowingly and willfully" intended to "defraud a health care benefit program." *See United States v. Wheeler*, 889 F. Supp. 2d 64, 71 (D.D.C. 2012), *aff'd*, 753 F.3d 200 (D.C. Cir. 2014). Where a defendant's mental state cannot be proved with direct evidence, intent may be shown through circumstantial evidence. *See United States v. Schaffer*, 183 F.3d 833, 843 (D.C. Cir. 1999), *vacated as moot* 240 F.3d 35 (D.C. Cir. 2001). Intent to defraud "can be inferred from efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." *Wheeler*, 889 F. Supp. 2d at 68 (quoting *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007)) (internal quotation marks omitted).

1.  Client-Related Evidence

Because Abou-Khatwa was indicted for defrauding BCA and not his clients (Indictment ¶¶ 12–16), he challenges the introduction of evidence concerning the amounts he charged his clients and the differences between those amounts and the premiums he paid on behalf of his clients to CareFirst (Def. Reply at 2). He argues that this evidence was improper because it did not fall under the common plan or scheme exception in Fed. R. Evid. 404(b), (Def. New Trial Mot. at 14–16), and because it should have been excluded under Fed. R. Evid. 403 as substantially more prejudicial than probative. (*Id.* at 16–23.)

The client-related overcharge evidence was admissible under Fed. R. Evid. 404(b) because it was introduced to show how Abou-Khatwa's scheme worked. As the court noted at trial, the client-related evidence "is integral in showing how the alleged fraud is perpetrated." (ECF No. 136, Trial Tr. at 1381:25–1382:8.) The indictment alleges a scheme in which Abou-Khatwa fraudulently obtained low premiums from CareFirst and marked them up to clients, allowing Abou-Khatwa to pocket the difference. (Indictment ¶¶ 12–13.) The client-related evidence—*e.g.*, the prices Abou-Khatwa charged his clients, the prices CareFirst charged Abou-Khatwa, and the difference between the two—was relevant to show that Abou-Khatwa profited and how he profited. The evidence was also necessary for the government to prove "[t]hat the scheme or plan was executed in connection with the delivery of or payment for health care benefits, items, or services" as required by 18 U.S.C. § 1347. (ECF No. 138, Trial Tr. at 1707:17–19.)

Moreover, the profit Abou-Khatwa derived from the scheme is relevant to another element of the crime: intent. To find Abou-Khatwa guilty of healthcare fraud under 18 U.S.C. § 1347, the jury had to find that he executed a "scheme with the intent to defraud a health care

benefit program." (ECF No. 138, Trial Tr. at 1707:20–22.)  Client-related evidence showing Abou-Khatwa's profits is relevant to show his intent in defrauding CareFirst.  Therefore, the client-related evidence is admissible under Fed. R. Evid. 404(b)(2) because it was introduced for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

Abou-Khatwa's reliance on Fed. R. Evid. 403 is similarly unavailing.  Evidence is excluded under Fed. R. Evid. 403 only when its potential for unfair prejudice substantially outweighs its probative value.  *See United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978).  At trial, the court balanced the evidence's risk of prejudice with its probative value and on this basis deemed it admissible.  (ECF No. 136, Trial Tr. at 1381:7–1382:25.)  That analysis has not changed: the probative value of the evidence (to show profit, intent, and scheme) was not substantially outweighed by any prejudicial effect.  The court further limited any potential prejudice by clarifying for the jury the date of each item of evidence as it was admitted, and specifying in its jury instruction how that evidence should be viewed.  (*Id.*; *see also* ECF No. 138, Trial Tr. at 1706:22–1707:7.)  Accordingly, any prejudice resulting from the 404(b) evidence did not outweigh its probative value.

        2.        <u>Evidence of Events Occurring Outside of the Statute of Limitations</u>

Before trial, the court ruled that Count 1 of the indictment was subject to the general federal statute of limitations, 18 U.S.C. §3282(a), and therefore "conduct alleged before March 20, 2013, [was] time-barred." (ECF No. 156, Oct. 24, 2019 Hr'g Tr. at 9:12–16.)  The court ruled, however, that acts committed outside the statutory period were "admissible evidence under prior—on uncharged conduct.  They come in to show common scheme or plan, lack of mistake, and intent." (*Id.* at 9:19–24.)

5

Abou-Khatwa argues that the court did not conduct any meaningful analysis to determine the admissibility of this evidence under Fed. R. Evid. 404(b). (Def. Reply at 10–11.) At trial, however, the court explained its ruling:

> [W]ith regard to your first point on the 404(b), there's no way—well, I find it very difficult to understand how the government could prove its case without the 404(b) evidence, because it is integral in showing how the alleged fraud is perpetrated. It was absolutely needed to show how this happened and how the alleged fraud took place. And so I do find that it is admissible to show absence of mistake, to show common scheme or plan. It meets the admissible requirements of 404(b) evidence.
> And so I understand there is a danger of prejudice always with this kind of instruction, and again that's why I'm going to give a limiting instruction, I'm going to give a special interrogatory, I'm going to put it on the verdict form.
> But I believe that, because it has been made clear to the jury at each stage when the particular acts occurred, the dates on the document—this is a document heavy case—that the jury can segregate the evidence, and I don't think it's overwhelming.

(ECF No. 136, Trial Tr. at 1381:25–1382:17.)

Abou-Khatwa cites to *United States v. Anzalone*, 783 F.2d 10, 11 (1st Cir. 1986), which rejected the argument that "a prosecutor may introduce evidence of an unlimited number of prior and unprosecuted crimes, however remote, free of any weighing for excessive prejudice, so long as the similarity of the modus operandi indicates an identity of scheme." Nonetheless, the Court in *Anzalone* affirmed the trial court's admission of the evidence even though the trial court's analysis was not "very lengthy or detailed." *See id.* at 12. Here, the court went beyond what *Anzalone* requires in explaining why the analysis was admissible under Fed. R. Evid. 404(b).

Citing Fed. R. Evid. 403, Abou-Khatwa also argues that the prejudicial effect of this evidence substantially outweighed its probative value. (Def. Reply at 11–12.) As the evidence was introduced, however, the court ensured that counsel specified the date of each piece of evidence for the jury and tried to ensure that evidence from before the statutory period did not

6

overwhelm the presentation of evidence from within the statutory period. (ECF No. 136, Trial Tr. at 1382:13–17; ECF No. 137, Trial Tr. at 1409:19–1410:8.) Moreover, the court made clear in its instruction to the jury that evidence of actions taken before 2013 could only be used for 404(b) purposes and that the jury had to find fraud against CareFirst within the statutory period. (ECF No. 138, Trial Tr. at 1706:22–1707:7.) The court stands by its finding that the possibility of prejudice did not substantially outweigh the probative value of the evidence.

      3.      <u>Adequacy of Notice and Jury Instructions</u>

Abou-Khatwa argues that the government did not provide reasonable notice of its intent to introduce both the BCA client evidence and the evidence of otherwise time-barred conduct, and that the limiting instruction was insufficient to mitigate their prejudicial effect. (Def. New Trial Mot. at 23–24, 32–34.)

"Notice of 'general nature' is all that Rule 404(b) requires." *United States v. Watson*, 409 F.3d 458, 466 (D.C. Cir. 2005); *See also United States v. Watt*, 911 F. Supp. 538, 556 (D.D.C. 1995) ("[C]ourts have routinely denied requests by defendants for greater particularity in 404(b) notice."). Abou-Khatwa acknowledges that the government indicated before trial that it would be offering Rule 404(b) evidence, and the court ruled before trial that the evidence would be admitted. (Def. New Trial Mot. at 23.) The issue was also raised at an October 15, 2019 pretrial hearing, during which the government argued that the 404(b) evidence was important, and the court agreed. (ECF No. 140, Hr'g Tr. at 8–28.) Because the issue was raised and decided on multiple occasions before and during trial, this court finds that any lack of specific notice did not unduly prejudice the defense.

With respect to jury instructions, the question is "whether, taken as a whole, they accurately state the governing law and provide the jury with sufficient understanding of the

issues and applicable standards." *United States v. Washington*, 106 F.3d 983, 1002 (D.C. Cir. 1997). The court's limiting instruction regarding the Rule 404(b) evidence informed them of the limited purpose for which the evidence was being admitted. (ECF No. 138, Trial Tr. at 1706:22–1706:25.) Moreover, the instruction specified that the jury could not find Abou-Khatwa guilty unless it found that he defrauded CareFirst "on at least one occasion within the statute of limitations." (*Id.* at 1707:1–1707:7.) In other words, the instruction explained why the evidence was being admitted and that the jury could not use it as substantive evidence of guilt. As such, the court finds that the jury instruction did not affect Abou-Khatwa's substantial rights.

**B.      Admission of Testimony and Charts under Fed. R. Evid. 1006.**

Fed. R. Evid. 1006 allows the admission of summary evidence when evidence is "too voluminous to be conveniently examined in court." *United States v. Lemire*, 720 F.2d 1327, 1347 (D.C. Cir. 1983). For a summary of documents to be admissible, (1) the documents must be so voluminous as to make comprehension by the jury difficult and inconvenient, (2) the documents themselves must be admissible, (3) the documents must be made reasonably available for inspection and copying, (4) the summary must be accurate and nonprejudicial, and (5) the witness who prepared the summary should introduce it. *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014) (citing *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008)). In *Lemire*, the D.C. Circuit established rules for summary-witness testimony in order to avoid "obvious dangers posed by summarization of evidence." 720 F.2d at 1348. First, to ensure that the jury will not "treat the summary as additional evidence or as corroborative of the truth of the underlying testimony," courts must give a "guarding instruction" that the summary itself is not evidence and is only an aid in evaluating evidence. *Id.* Second, to avoid "the subtle introduction of otherwise inadmissible evidence," the proponent of the summary evidence must

show the admissibility of the underlying materials.  *Id.* at 1349.  Third, to avoid summary evidence becoming "an extra summation for the government," summary evidence or witnesses "should not draw controversial inferences or pronounced judgment."  *Id.* at 1349–50.

Abou-Khatwa argues that the testimony of two government witnesses—Jill Albee and Special Agent Nicole Hinson—was unfairly prejudicial, and that the court did not properly instruct the jury regarding their testimony and their charts.  (Def. New Trial Mot. at 34–41.)

With respect to Albee, Abou-Khatwa argues that her testimony regarding percentage markups was unfairly prejudicial because it inferred that he overcharged his clients.  (*Id.* at 37–38.)  The testimony, however, did not give rise to such an inference.  (*See, e.g.*, ECF No. 137, Trial Tr. at 1401:7–11; 1411:18–1412:6; 1422:2–1423:7.)  The numbers from which Albee calculated the percentage markups were included in the invoices, which were introduced into evidence, and the jury could have reached the same results if it reviewed the voluminous records themselves.  Moreover, Albee exercised minimal judgment in matching the CareFirst Invoices to BCA invoices, and her testimony was subject to cross-examination.  (ECF No. 137, Trial Tr. at 1458:15–1469:2.)  *See also Lemire* 720 F.2d at 1348 (holding that the full opportunity to cross-examine "alleviat[es] any danger of inaccuracy or unfair characterization").

Abou-Khatwa argues that Hinson's testimony exceeded the proper scope of a Rule 1006 witness because she testified about the context and contents of certain documents about which she had no personal knowledge.  (Def. New Trial Mot. at 39.)  This is a mischaracterization of Hinson's testimony; she testified from her personal knowledge of the documents she reviewed.  (ECF No. 137, Trial Tr. at 1506:7–1508:14; 1524:16–1525:3.)  While Abou-Khatwa is correct that *Lemire* focused on "the subtle introduction of otherwise inadmissible evidence," 720 F.2d at 1349, that concern is not warranted here.  The court was careful to make sure that the

government provided sufficient foundation for Hinson's testimony.  (*See, e.g.*, ECF No. 137, Trial Tr. at 1518:3–13; 1523:8–1525:3.)  Given that proper foundation, the court finds no issue with Hinson's testimony regarding the documents she reviewed.

Abou-Khatwa further argues that Hinson's characterization of certain employee identities as "dummies" was an inappropriate controversial inference.  (Def. New Trial Mot. at 40.)  Hinson's use of the term "dummy" was merely a short-hand term used to describe a pattern that existed in the documents.  The government laid the proper foundation for Hinson's summary regarding the "dummy" identities, and Hinson fully explained the pattern within the records.  (*See* ECF No. 137, Trial Tr. at 1536:15–1537:23.)  Moreover, the defense chose not to cross-examine Hinson.  (*Id.* at 1548:11–16.)  For these reasons, Hinson's testimony was appropriate under Fed. R. Evid. 1006.

Lastly, Abou-Khatwa contends that the court did not provide an adequate "guarding instruction" as required by *Lemire*.  720 F.2d at 1348.  (Def. New Trial Mot. at 40–41.)  The court gave the following instruction regarding the summary evidence: "The government presented testimony from individuals regarding exhibits in the form of charts and summaries.  Those charts and summaries have been admitted into evidence for clarity and convenience.  Accordingly, you should treat the testimony and the charts and summaries as you treat any other evidence during this trial."  (ECF No. 138, Trial Tr. at 1702:25–1703:5.)

Given the earlier instructions provided to the jury on how to weigh evidence, this instruction is consistent with *Lemire's* requirements.  *See also Vega*, 826 F.3d at 524 (holding that, when reviewing an instruction for legal error, the "pertinent question is whether, taken as a whole, the instructions accurately state the governing law and provide the jury with sufficient understanding of those issues and applicable standards.") (quoting *United States v. Wilson*, 605

F.3d 985, 1018 (D.C. Cir. 2010)). In instructing the jury that they should treat the summaries as they would any other evidence, the court referred to its earlier instruction that the jury should "give any evidence such weight as in your judgment it is fairly entitled to receive." (ECF No. 138, Trial Tr. at 1693:5–6.) The court went on to instruct the jury that it "should consider all the facts and circumstances in evidence to determine which of the witnesses you believe." (*Id.* at 1696:8–9.) These instructions are similar to those upheld in *Lemire*, which instructed the jury that summaries are used for convenience and should be scrutinized in conjunction with the other evidence presented at trial.[2]

Even if the specific instruction as to summary evidence was imprecise, Abou-Khatwa still has not shown that it affected his substantial rights. As noted above, the court addressed any *Lemire* concerns by ensuring that the government laid the proper foundation before the evidence was admitted, and the defense had a full opportunity to cross-examine the summary witnesses. In all respects, the defense has not met its burden for a new trial.

---

[2] The court in *Lemire* upheld the following jury instruction:
> [T]he testimony of an accountant—and that is what Mr. Kasper is—and the prepared charts and summaries that he will show you, have been received for the sole purpose of explaining facts disclosed by books, records, other documents, and testimony; in other words, evidence in this case.
> Such charts and summaries, as you see there, are not, in and of themselves proof of any facts. If such charts and summaries do not correctly reflect the facts or figures shown by the evidence, as you have heard in this case, then you should totally disregard those charts.
> In other words, such charts or summaries are used only as a matter of convenience.
> So if, and to the extent that, you find that they are not in truth summaries of facts or evidence of figures shown by evidence, as you have heard it, you are to disregard them entirely.

720 F.2d at 1348 n.32.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for a new trial is hereby DENIED.

Date: August 14, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge