## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TAREK ABOU-KHATWA | ) | Case No. 18-cr-00067 (TSC) |
| | ) | |
| a/k/a | ) | |
| | ) | |
| DEAN ADDEM, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Defendant Tarek Abou-Khatwa was convicted of using his position as an insurance broker for Benefits Consulting Associates, LLC (BCA) to defraud CareFirst BlueCross BlueShield (CareFirst). (ECF No. 1, Indictment ¶¶ 4, 6, 12.)  As part of this scheme, Abou-Khatwa provided CareFirst with fraudulent information to obtain low insurance premiums for his clients, then marked up the premiums he charged the clients, pocketing the difference. (*Id.* ¶ 13.)

Abou-Khatwa was indicted on one count of devising a scheme to defraud a health care program (18 U.S.C. § 1347), three counts of false statements related to health care matters (18 U.S.C. § 1035(a)(2)), eight counts of mail fraud (18 U.S.C. § 1341), six counts of wire fraud (18 U.S.C. § 1343), and six counts of identity theft (22 D.C. Code §§ 3221(a) and 3222(a)(1)).  After a ten-day trial, a jury found Abou-Khatwa guilty on twenty-two counts.[1]  (ECF No. 127.)

---

[1] After both sides rested, the court granted Abou-Khatwa's unopposed motion for a judgment of acquittal on one count of mail fraud and one count of identity theft in the first degree, Counts Twelve and Twenty-One of the Indictment, respectively.  (ECF No. 138, Trial Tr. at 1626:23–1627:24.)

The government has moved for the entry of a preliminary order of forfeiture.  For the reasons set forth below, the motion will be GRANTED and the court will adopt the government's proposed preliminary order of forfeiture.

## I.   LEGAL STANDARD

Under Federal Rule of Criminal Procedure 32.2(b)(1)(A), where "the government seeks a personal money judgment," as it does here, "the court must determine the amount of money that the defendant will be ordered to pay."  Fed. R. Crim. P. 32.2(b)(1)(A).  The rules further provide that "[t]he court's determination may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable."  Fed. R. Crim. P. 32.2(b)(1)(B).  "If the court finds that property is subject to forfeiture, it must promptly order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria."  Fed. R. Crim. P. 32.2(b)(2)(A).

The government must prove the facts supporting forfeiture by a preponderance of the evidence.  *United States v. Gaskin*, 364 F.3d 438, 461 (2d Cir. 2004).  Forfeiture is mandatory in cases where it applies.  *See United States v. Monsanto*, 491 U.S. 600, 607 (1989); *United States v. Perholtz*, 842 F.2d 343, 373 (D.C. Cir. 1988) ("forfeiture is mandatory" if statutory criteria is satisfied); *United States v. Emor*, 850 F. Supp. 2d 176, 216 (D.D.C. 2012) (same).

The primary forfeiture provision at issue is § 982(a)(7) of Title 18, which applies to Counts One through Four (the health care fraud offenses).  It provides that "in imposing sentence on a person convicted of a Federal health care offense," the court "*shall* order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly,

from gross proceeds traceable to the commission of the offense." 18 U.S.C. § 982(a)(7) (emphasis supplied). The D.C. Circuit has interpreted the phrase "gross proceeds" broadly: "'[g]ross proceeds traceable to' the fraud include 'the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied.'" *United States v. Bikundi*, 926 F.3d 761, 792 (D.C. Cir. 2019) (quoting *United States v. Poulin*, 461 F. App'x 272, 288 (4th Cir. 2012)). The statute does not allow credit for "lawful services," unlike other forfeiture statutes such as 18 U.S.C. § 981(a)(2)(B). *Id.* at 793.

## II.   PRELIMINARY ORDER OF FORFEITURE

The government seeks a forfeiture money judgment in the amount of $8,402,966.73 which it claims represents the gross proceeds Abou-Khatwa received from his fraudulent scheme. (ECF No. 173, Gov't Mem. at 6.) Abou-Khatwa objects to the entry of a money judgment, broadly alleging that the government cannot meet its burden under either 18 U.S.C. § 982(a)(7) or 18 U.S.C. § 981(a)(1)(C).

Applying the standards set forth above, the court finds that a preliminary order of forfeiture in the amount of $8,402,966.73 is appropriate. The government arrived at this figure using three exhibits that were presented at trial during the testimony of Jill Albee, an FBI forensic accountant. The first two exhibits, 1034 and 1035, show "the money deposited into BCA accounts from BCA clients" from January 1, 2010 through December 31, 2013 (the relevant time period charged in the Indictment). (ECF No. 137, Trial Tr. at 1412 (discussing Gov't Ex. 1035); *id.* at 1414 (discussing Gov't Ex. 1034).) The third exhibit, 1036, summarizes the commissions Abou-Khatwa received from CareFirst from January 1, 2010 through March 19, 2013. These proceeds were paid into BCA's account pursuant to contracts procured as part of Abou-Khatwa's fraudulent scheme. Accordingly, the court finds that these amounts are

traceable to the commission of the offense and are therefore the appropriate amounts the court must use to calculate a forfeiture order in accordance with 18 U.S.C. § 982(a)(7).

Abou-Khatwa contends that if the court finds that the government has met its burden with regard to forfeiture, only the amount he defrauded CareFirst should be subject to forfeiture, i.e., the difference between the premiums CareFirst charged and what CareFirst would have charged but for the alleged fraud. In his view, these are the only proceeds that can be traced to the offense.

Abou-Khatwa's position is wholly at odds with D.C. Circuit precedent. In *Bikundi*, the Circuit made clear that § 987(a)(7) applies to "the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied." 926 F.3d at 792 (quoting *United States v. Poulin*, 461 F. App'x 272, 288 (4th Cir. 2012)). The Court also emphasized that, "whereas other forfeiture statutes allow credit for 'lawful services,' . . . the statute for health care fraud does not." *Id.* at 793. Because Abou-Khatwa secured the insurance contracts by submitting fraudulent applications to CareFirst, the proceeds from those contracts are traceable to his fraudulent scheme, notwithstanding any lawful services he provided.

The government also contends that 18 U.S.C § 981(a)(1)(C) applies to Counts Five through Eleven (the mail fraud offenses) and to Counts Thirteen through Eighteen (the wire fraud offenses). This provision subjects to forfeiture "[a]ny property real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting specified unlawful activity (as defined in section 1956(c)(7) of this title)" such as mail or wire fraud. In addition, § 981(a)(2)(A) states that in cases involving health care fraud schemes, "the term 'proceeds' means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and *is not*

*limited* to the net gain or profit realized to the offense" (emphasis supplied). Like § 982, the language of § 981(a)(2)(A) makes clear that no credit for lawful services should be applied. Thus, the government is also entitled to a preliminary order of forfeiture under § 981. At the forfeiture hearing, the government clarified that any amount sought under § 981 would be included in the amount sought under § 982(a)(7), thus no adjustment to the amount discussed above is necessary.

### III.   EXCESSIVE FINES CLAUSE

Abou-Khatwa also argues that because he cannot pay an $8.4 million-dollar fine, entry of the proposed forfeiture order would violate the Excessive Fines Clause of the Eighth Amendment. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed.").[2] The government responds that the proposed fine is not unconstitutional and Abou-Khatwa's ability to pay the forfeiture amount is irrelevant to the entry of a money judgment. The court agrees.

An Excessive Fines Clause analysis entails two steps: "(1) determining whether the government extracted payments for the purpose of punishment; and (2) assessing whether the extraction was excessive. The first step determines whether the Excessive Fines Clause applies, and the second determines if the Clause was violated." *Bikundi*, 926 F.3d at 327 (quoting *Consol. Commc'ns of Cal. Co. v. FCC*, 715 F. App'x 13, 15 (D.C. Cir. 2018) (unpublished per curiam)); *see also United States v. Bajakajian*, 524 U.S. 321, 328, 334 (1998).

---

[2] Abou-Khatwa provided no support for his contention that he cannot pay such a fine. (*See, e.g.*, ECF No. 161 at 27 (representing, without evidence, that Abou-Khatwa "has demonstrated an inability to pay a fine under USSG § 5E1.2").) In fact, the presentence report indicates that Abou-Khatwa has assets totaling more than $1.2 million, a monthly cash flow of more than $20,000, and several luxury vehicles.

As to the first step, the court is not convinced that the Excessive Fines Clause applies here because the forfeiture is "purely remedial" rather than punitive. *See Bikundi*, 926 F.3d at 327 (declining to assess the district court's conclusion that the Excessive Fines Clause did not apply).

Even if the proposed forfeiture could be considered punitive, the proposed amount is not "grossly disproportional to the gravity" of Abou-Khatwa's offense. *See id.* (quoting *Bajakajian*, 524 U.S. at 334). In reaching this conclusion, the court considers four, non-exclusive factors set forth by the Supreme Court in *Bajakajian*: (1) the essence of the crime; (2) whether the defendant fits into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct. *See also Bikundi*, 926 F.3d at 327.

The crime here was serious and involved careful planning and deception. Abou-Khatwa orchestrated a scheme that lasted several years and involved falsifying applications for employer-group insurance contracts to obtain lower premium rates. He attempted to hide his fraudulent scheme by submitting false information during CareFirst's audits. (*See* Indictment ¶¶ 14–15.) Abou-Khatwa also falls within the class of persons targeted by § 982(a)(7)—health care fraudsters. *See Bikundi*, 926 F.3d at 327. Furthermore, health care fraud carries heavy criminal penalties, including a maximum prison sentence of ten years. *See id.* (citing 18 U.S.C. § 1347(a)). Finally, Abou-Khatwa's scheme preyed on small businesses and non-profit organizations with limited administrative support, and, in some cases, his actions caused some employees "to be denied coverage for medical care due to discrepancies in their CareFirst listed age and their true dates of birth." (Indictment ¶¶ 14c, 15.) This is hardly the type of behavior that can be considered to have had a "minor" impact. *See Bajakajian*, 524 U.S. at 339.

6

The court emphasizes that it is bound by Congress's language in the forfeiture statute—it "shall" enter a forfeiture where a defendant has been convicted of a federal health care offense. 18 U.S.C. § 982(a)(7).  Ultimately, Abou-Khatwa's unsupported claim that he cannot pay the fine at issue, "in and of itself, is not at all sufficient to render a forfeiture unconstitutional." *United States v. Levesque*, 546 F.3d 78, 85 (1st Cir. 2008).

## IV.   CONCLUSION

For the foregoing reasons, the court finds that the government is entitled to a preliminary order of forfeiture against Abou-Khatwa in the amount of $8,402,966.73, which represents the gross proceeds traceable to the offenses alleged in Counts One through Four pursuant to 18 U.S.C. § 982(a)(7) and the proceeds traceable to the violations alleged in Counts Five through Eleven and Counts Thirteen through Eighteen pursuant to 18 U.S.C. § 981(a)(1)(C).  The court will issue an order accordingly.

Date:  January 28, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge